| | |
|---|---|
| DISTRICT COURT, COUNTY OF DENVER<br>STATE OF COLORADO<br><br>Court Address:   1437 Bannock Street<br>                 Denver, CO 80202<br>                 (720) 865-8301 | DATE FILED: February 7, 2023 3:06 PM<br>FILING ID: 72D00D66BEE82<br>CASE NUMBER: 2023CV30426 |
| SCHOOL DISTRICT NO. 1 IN THE CITY & COUNTY OF DENVER a/k/a Denver Public Schools and a/k/a Denver Public School District No. 1 and LEXINGTON INSURANCE COMPANY, as subrogee of School District No. 1 in the City & County of Denver a/k/a Denver Public Schools and a/k/a Denver Public School District No. 1<br><br>                        Plaintiffs,<br><br>v.<br><br>MCKINSTRY ESSENTION, LLC and JOHNSON CONTROLS, INC.<br><br>                        Defendants. | ▲ COURT USE ONLY ▲ |
| **Attorneys for Plaintiffs**<br>GLENN W. MATTAR #48074<br>PAUL B. HINES # 51025<br>Denenberg Tuffley, PLLC<br>28411 Northwestern Hwy., Suite 600<br>Southfield, MI 48034<br>Phone:   (248) 549-3900<br>Fax:     (248) 593-5808<br>E-mails:  gmattar@dt-law.com  phines@dt-law.com | Case No.: |
| **COMPLAINT AND JURY DEMAND** | |

COME NOW Plaintiffs, School District No. 1 in the City & County of Denver a/k/a Denver Public Schools and a/k/a Denver Public School District No. 1 and Lexington Insurance Company as subrogee of School District No. 1 in the City & County of Denver a/k/a Denver Public Schools and a/k/a Denver Public School District No. 1, by and through their undersigned counsel, and for their Complaint and Jury Demand against Defendants state and allege as follows:

EXHIBIT B

## PARTIES, JURISDICTION AND VENUE

1. Plaintiff School District No. 1 in the City & County of Denver a/k/a Denver Public Schools and d/b/a Denver Public School District No. 1 ("DPS") is a political subdivision of the State of Colorado.

2. At all times relevant herein, DPS owned an elementary school building, known as Cheltenham Elementary, located at 1580 Julian St., Denver, Colorado (the "School").

3. Plaintiff Lexington Insurance Company ("Lexington") is a Delaware corporation with its administrative offices in Boston, Massachusetts. Lexington is a surplus lines carrier that provides insurance in Colorado on a non-admitted basis. At all relevant times herein, Lexington provided property insurance to DPS, insuring, among other property, the School.

4. Defendant McKinstry Essention, LLC ("McKinstry") is a Washington limited liability company with its principal place of business located in Seattle, Washington.

5. Defendant Johnson Controls, Inc. ("Johnson Controls") is a Wisconsin corporation with its principal place of business located in Milwaukee, Wisconsin.

6. This Complaint arises out of damage to the School on February 14, 2021.

7. Venue is proper as the actions and events giving rise to this matter occurred in Denver County.

## GENERAL ALLEGATIONS

8. In January 2020, DPS contracted with McKinstry whereby McKinstry would provide general contracting, project management, architectural and engineering services with respect to energy related upgrades to numerous school buildings owned by DPS.

9. McKinstry subcontracted portions of this work to Johnson Controls.

10. With respect to the School, the work included, but was not limited to, the installation of new equipment, controls and programing with respect to air handler units/the HVAC system.

11. Johnson Controls performed portions of the work at the School, including but not limited to programming/controls.

12. On February 14, 2021, water coils on air handler unit number 10 (AHU-10) at the School ruptured, causing and extensive amount of water to release, flooding the basement and causing significant damage (the "Incident").

2

13. Subsequent expert investigations revealed that the coils froze and failed as a result of freezing conditions caused by the failure of the outside air damper to close when the temperature became too low.

14. Specifically, in relation to McKinstry and Johnson Controls' work, the outside air damper was supposed to be programed to close when the mixed air temperature fell below 50 degrees F.

15. McKinstry and Johnson Controls failed to properly provide programing and controls, causing the temperature to fall to a point that allowed the water in the coils to freeze.

16. As a result of the Incident, DPS submitted an insurance claim to Lexington Insurance Company seeking reimbursement of property damage caused by the Incident.

17. Pursuant to its policy of insurance, Lexington was obligated to and did issue payment to or on behalf of DPS in the amount of $458,350.

18. Pursuant to its payments, Lexington has become subrogated, to the extent of its payments, to DPS' rights of recovery against Defendants.

19. In addition to Lexington's payments, DPS also incurred $790,852 in uninsured losses.

## COUNT I – BREACH OF CONTRACT
### (Against Defendant McKinstry)

20. Plaintiffs incorporate all preceding paragraphs as if fully stated herein.

21. In January 2020, DPS contracted with McKinstry whereby McKinstry would provide the services described above.

22. The contract contained numerous obligations, including but not limited to:

   a. McKinstry warranted that all equipment sold and installed would be "materially free from defects in materials or workmanship, will be installed properly in a good and workmanlike manner, and will function properly for a period of two (2) years from the date of Substantial Completion . . ." [Energy Performance Contract, section 11.1];

   b. That "[t]he Equipment is or will be compatible with all other current Premises mechanical and electrical systems, subsystems, or components with which the equipment interacts, and that, as installed, neither the Equipment nor such

3

      other systems, subsystems, or components will materially adversely affect each other as a direct or indirect result of Equipment installation or operation" [*Id.*, Section 20.2 (vi)];

c. That McKinstry "shall supervise and direct the Work, using the Contractor's best skill and attention." [*Id.*, Schedule N, Section 3.3.1];

d. That McKinstry "shall be solely responsible for, and have control over, construction means, methods, techniques, sequences, and procedures, and for coordinating all portions of the Work under the Contract." [*Id.*];

e. That McKinstry "shall be responsible to the Owner for acts and omissions of the Contractor's employees, Subcontractors and their agents and employees, and other persons or entities performing portions of the Work for, or on behalf of, the Contractor or any of its Subcontractors." [*Id.*, Section N, Section 3.3.2];

f. McKinstry warranted that work "will conform to the requirements of the Contract Documents and will be free from defects . . ." [*Id.*, Section N, Section 3.5.1];

g. That McKinstry would indemnify and hold DPS harmless "from and against claims, damages, losses . . . arising out of or resulting from the performance of the Work . . ." [*Id.*, Schedule N, Section 3.18.1];

h. That McKinstry "shall be responsible for initiating, maintaining, and supervising all safety precautions and programs in connection with the performance of the Contract." [*Id.*, Schedule N, Section 10.1]; and

i. That McKinstry "shall take reasonable precautions for safety of, and shall provide reasonable protection to prevent damage, injury, or loss to" the work or other property at the site. [*Id.*, Schedule N, Section 10.2].

      23.    McKinstry breached its contractual obligations, through the following acts and/or omissions, including but not limited to:

a. Providing equipment and/or programing/controlling the HVAC system in a manner that caused the outside air damper to not close when the mixed air temperature fell below 50 degrees F;

b. Performing its work in a manner that made AHU-10's water coils susceptible to freezing;

4

c. Failing to properly perform programming and/or controls for the outside air damper;

d. Performing defective work;

e. Failing to use reasonable care in the performance of its work;

f. Failing to properly supervise its subcontractors and/or failing to properly coordinate the work of its subcontractors;

g. Failing to take reasonable precautions to protect the property at the School in the performance of its work;

h. Failing to reimburse DPS for all damages caused by its work;

i. Failing to indemnify DPS for all damages caused by its work;

j. Other acts and/or omission that become known during the course of discovery.

24. As a direct and proximate result of McKinstry's breach of contract, the Incident occurred, causing the damages outlined above.

**WHEREFORE**, Plaintiffs respectfully requests this Court award it a judgment against McKinstry in an amount to be proven at trial, together with costs, attorneys' fees, expenses, pre- and post-judgment interest and any other relief this Court deems just and proper.

## COUNT II – BREACH OF EXPRESS AND/OR IMPLIED WARRANTIES
### (Against Defendant McKinstry)

25. Plaintiffs incorporate all preceding paragraphs as if fully stated herein.

26. In January 2020, DPS contracted with McKinstry whereby McKinstry would provide the services described above.

27. McKinstry provided various express warranties, as described above.

28. McKinstry also impliedly warranted that its work would be performed in a workmanlike manner and would be free from defects.

29. McKinstry breached its express and/or implied warranties through the following acts and/or omissions, including but not limited to:

a. Providing equipment and/or programing/controlling the HVAC system in a manner that caused the outside air damper to not close when the mixed air temperature fell below 50 degrees F;

b. Performing its work in a manner that made AHU-10's water coils susceptible to freezing;

c. Failing to properly perform programming and/or controls for the outside air damper;

d. Performing defective work;

e. Failing to use reasonable care in the performance of its work;

f. Failing to properly supervise its subcontractors and/or failing to properly coordinate the work of its subcontractors;

g. Failing to take reasonable precautions to protect the property at the School in the performance of its work;

h. Failing to reimburse DPS for all damages caused by its work;

i. Failing to indemnify DPS for all damages caused by its work;

j. Other acts and/or omissions that become known through the course of discovery.

30. As a direct and proximate result of McKinstry's breach of express and/or implied warranties, the Incident occurred, causing the damages outlined above.

**WHEREFORE**, Plaintiffs respectfully requests this Court award it a judgment against McKinstry in an amount to be proven at trial, together with costs, attorneys' fees, expenses, pre- and post-judgment interest and any other relief this Court deems just and proper.

<u>**COUNT III – NEGLIGENCE AND/OR GROSS NEGLIGENCE**</u>
<u>**(Against Defendant McKinstry)**</u>

31. Plaintiffs incorporate all preceding paragraphs as if fully stated herein.

32. At all times relevant herein, McKinstry owed DPS a duty to perform its work with reasonable care so as to avoid damage to DPS' property.

33. At all times relevant herein, McKinstry owed DPS a duty to perform its work in a safe and workmanlike manner so as to avoid damage to the School and to perform its work in compliance with all applicable industry standards, laws and codes.

34. McKinstry breached its duties owed to DPS through the following acts and/or omissions constituting negligence and/or gross negligence, including but not limited to:

   a. Providing equipment and/or programing/controlling the HVAC system in a manner that caused the outside air damper to not close when the mixed air temperature fell below 50 degrees F;

   b. Performing its work in a manner that made AHU-10's water coils susceptible to freezing;

   c. Failing to properly perform programming and/or controls for the outside air damper;

   d. Performing defective work;

   e. Failing to use reasonable care in the performance of its work;

   f. Failing to properly supervise its subcontractors and/or failing to properly coordinate the work of its subcontractors;

   g. Failing to take reasonable precautions to protect the property at the School in the performance of its work;

   h. Other acts and/or omissions that become known through the course of discovery.

35. As a direct and proximate result of McKinstry's negligence and/or gross negligence, the Incident occurred, causing the damages outlined above.

**WHEREFORE**, Plaintiffs respectfully requests this Court award it a judgment against McKinstry in an amount to be proven at trial, together with costs, attorneys' fees, expenses, pre- and post-judgment interest and any other relief this Court deems just and proper.

## COUNT IV – NEGLIGENCE AND/OR GROSS NEGLIGENCE
### (Against Defendant Johnson Controls)

36. Plaintiffs incorporate all preceding paragraphs as if fully stated herein.

37. At all times relevant herein, Johnson Controls owed DPS a duty to perform its work with reasonable care so as to avoid damage to DPS' property.

38. At all times relevant herein, Johnson Controls owed DPS a duty to perform its work in a safe and workmanlike manner so as to avoid damage to the School and to perform its work in compliance with all applicable industry standards, laws and codes.

39. Johnson Controls breached its duties owed to DPS through the following acts and/or omissions constituting negligence and/or gross negligence, including but not limited to:

   a. Providing equipment and/or programing/controlling the HVAC system in a manner that caused the outside air damper to not close when the mixed air temperature fell below 50 degrees F;

   b. Performing its work in a manner that made AHU-10's water coils susceptible to freezing;

   c. Failing to properly perform programming and/or controls for the outside air damper;

   d. Failing to correct the defective condition of the outside air damper even after being notified of the condition before the Incident by McKinstry;

   e. Failing to use reasonable care in the performance of its work;

   f. Other acts and/or omission that become known during the course of discovery.

40. As a direct and proximate result of Johnson Controls' negligence and/or gross negligence, the Incident occurred, causing the damages outlined above.

**WHEREFORE**, Plaintiffs respectfully requests this Court award it a judgment against Johnson Controls in an amount to be proven at trial, together with costs, attorneys' fees, expenses, pre- and post-judgment interest and any other relief this Court deems just and proper.

**PLAINTIFFS DEMAND TRIAL BY JURY.**

Respectfully submitted February 7, 2023.

                                     */s/ Glenn W. Mattar*
                                     Glenn W. Mattar #48074
                                     Paul B. Hines #51025
                                     DENENBERG TUFFLEY, PLLC
                                     28411 Northwestern Hwy., Suite 600
                                     Southfield, MI  48034
                                     Telephone:       (248) 549-3900
                                     Fax:                 (248) 593-5808
                                     Email:    gmattar@dt-law.com  phines@dt-law.com
                                     *Attorneys for Plaintiffs*